## PENN. SCHUYL. V. R. Co. v. MARGARET ZIEMER.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 4, 1889—Decided March 18, 1889.

1. The right of action against a railroad company for consequential injuries to land from the construction of a railroad, where no part of the land itself is taken, accrues when the railroad is constructed, and not when it is first located and the appropriation made.

2. Where a witness has testified for the plaintiff as to the manner in which the construction of a railroad has affected the market value of property injured, it is incompetent to inquire on cross-examination what the company paid in settlement of injuries to other properties near to that of the plaintiff.

3. Upon the amount found by the jury as damages for consequential injuries caused by the construction of a railroad in proximity to the land of the plaintiff, interest may be allowed from the date of the construction, not as interest but as part of the damages.

4. Where a railroad is laid down upon a public street, and, though at grade, is so constructed with reference to the property of an abutting owner, that by its lawful operation the drainage is interfered with and access to the property rendered dangerous, the company is liable for the consequential injuries resulting. under § 8, article XVI. of the constitution.

5. It seems that, in such case, injuries to the business of a store kept by the landowner in a building, which, though upon the property injured does not itself abut upon the street occupied by the railroad company, may be considered as an element of damage, in so far as affecting the value of the property.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 322 January Term 1888, Sup. Ct.; court below, No. 45 January Term 1886, C. P.

On December 25, 1885, Margaret Ziemer, widow, and five others who were the heirs at law of Samuel Ziemer, deceased, brought an action on the case against the Pennsylvania Schuylkill Valley Railroad Company, to recover damages for injuries to their property caused by the construction of the defendant company's railroad. The plaintiff's narr was not printed in the paper books. Issue.

At the trial on October 20, 1887, it was shown that Samuel Ziemer died on June 11, 1884, seised of a lot fronting 140 feet on Canal street and 47 feet on Bingaman street, Reading. Bingaman street made an obtuse angle with Canal street at one end of the lot. In this angle and fronting on Bingaman street were two dwellings connected with each other, though the front of one in which a store was kept was close to said street and that of the other was further·back. The side of the double house was towards Canal street with no intervening structures. On the other end of the lot and fronting on Canal street were several buildings, a slaughtering-house, a meat-house, an ice-house and a stable. One of the dwellings was occupied a part of the time by tenants.

Three railroad lines occupied Canal street longitudinally, in front of the property; first, the Wilmington & Northern, on the far side of the street opposite the property; then, the West Reading line, in the middle of the street, and then the defendant company's line, on the near side of the street occupying a small portion of the foot-way at the curb-line. There was a switch line to the freight depot of the defendant company crossing all three lines diagonally in front of plaintiffs' premises. The tracks were all laid at grade.

There was testimony to the effect that by the construction of the defendant company's roadway, which was done in June, 1885, the drainage of plaintiffs' property was destroyed; that access to the property on Canal street was made difficult and dangerous—" To tell the truth, that property has no road any more;" that the dwellings were "full" of smoke, noise and dirt.

John P. Strohecker, called for plaintiffs, testified upon the subject of the injuries and the damages. On his cross-examination the following offer was made:

Mr. Derr: "The witness on the stand having testified as to the effect of the construction of the defendant's railroad upon the market value of the plaintiffs' property, the defendants propose to test his knowledge of market values and of the effect of the defendant's railroad upon market values, by asking him what the people owning property adjoining the plaintiffs and upon the same street, and the owners of property on the same street and in close proximity to the plaintiffs, receiv-

ed from the defendant company for the privilege of using their property in the street for the purposes of their railroad."

Objected to by plaintiffs, as irrelevant, immaterial, and incompetent.

By the court: Offer refused; exception.[2]

Mrs. Margaret Ziemer, one of the plaintiffs, called:

Mr. Bland: " Plaintiffs propose to ask the witness on the stand as to the effect of the construction of the road upon the custom of her store. The object of the inquiry is to prove that by reason of the proximity of the road to the store, and the danger resulting to horses and persons from the frequent shifting of engines to and fro near the store building of the plaintiffs, the custom of the store is greatly diminished; this for the purpose of proving the effect of the construction of the road upon the property as a place of business, and not for the purpose of recovering any loss by reason of the diminution of trade."

Mr. Derr: " Objected to by defendant: 1. Because the store property does not front on Canal street, nor is it contiguous thereto; another property, separate therefrom and used for a different purpose altogether, being interposed between it and Canal street; as an element of damages, the matter proposed to be proved is too remote; 2. Because it is, generally, irrelevant, inadmissible, and incompetent."

By the court: Offer admitted; exception.[3]

The testimony of the witness, admitted, sustained the offer.

In the defendant's case George R. Van Reed was called, and it was proposed to prove by him that the defendant company's road was duly located and staked out for construction upon Canal street opposite the plaintiffs' property, in the fall of 1883, by resolution of the board of directors, and with the consent of the city councils; so that though the road was actually constructed after the death of Mr. Ziemer, the location of it preceded his death, and the right to damages accrued at a time when the plaintiffs had no ownership.

Objected to by the plaintiffs.

By the court: Offer refused; exception.[1]

At the close of the testimony, the court, ERMENTROUT, J., charged the jury:

Charge of Court below.

The parties plaintiff claim to be owners of certain property in the city of Reading at the corner of Canal and Bingaman streets, fronting some forty-seven feet on Bingaman street, and some one hundred and forty feet on Canal street. The jury will recollect the testimony as to the ownership, and the location and character of the buildings that were erected upon this property, as well as the parties who were upon the property at the time of the actual location and construction of this railroad. It is alleged that in 1855 the defendants located and constructed their railroad upon and down Canal street directly in front of this property, and that the plaintiffs' property was in this way injured.

The defendants have asked us to charge you:

1. That the plaintiffs have not submitted sufficient evidence of title to enable them to recover in this case.

Answer: This point is refused.

2. The plaintiffs' declaration sets up a reversionary interest, merely, to the greater portion of the property in question, and all their testimony is as to the difference in market value of the entire property, undiminished by any leasehold interest vested in other people, before and after the construction of the railroad. A verdict based upon such testimony would embrace damages to which the owners of the leasehold interest would be entitled, and cannot therefore be rendered; and there being no evidence in the case on the part of the plaintiffs from which the jury could assess the damages to the plaintiffs' property as described in the declaration, the verdict must be for the defendant.

Answer: This point is also refused.[5]

3. The railroad company have not, by the construction of their railroad on part of the street in question, excluded the public therefrom; nor have they a right to exclude the public therefrom. The street still belongs to the people of the commonwealth and the public at large, including the plaintiffs' tenants, and the railroad company have the right to use the said street for passage to and fro, each one in such use accommodating himself to the other in a reasonable manner.

Answer: This point we affirm.

Previous to the constitution of 1874, there could be no recovery in cases of this character. Unless there was an actual

taking of property, an actual going upon the property and laying down the railroad tracks upon it, there was no remedy. Corporations like a railroad company, possessing what is known as the right of eminent domain, could place their tracks upon the public highway, although such action might materially injure the market value of adjoining properties, and without any responsibility whatever in damages.

But the provisions of the constitution of 1874 require that just compensation should be made for property taken, injured, or destroyed, either in the construction or in the enlargement of such public works as railroad companies ; and in this way the constitution remedied a great defect and hardship which existed under the old law. [And the courts now say that under the new constitution a man who is injured is entitled to compensation for all the damages, direct or consequential, which he suffered or might suffer in consequence of the building and operation of a railroad placed upon a street in the manner that this was placed upon the street.] [6]

You will observe that the language of the constitution is " just compensation ; " just compensation for the injury that may have been done. Compensation for the damages, direct or consequential, is the measure to be considered by a jury. In ascertaining what this just compensation is the courts have laid down some general rules, and they do not materially differ, in cases of this character, from what they were previous to the constitution, when applied to an actual taking of land.

If the plaintiffs were the owners in fee-simple, in possession, without having any portion of the land leased away, it would be the duty of the jury to inquire what was the fair market value of the property at and immediately before the location and construction of the railroad ; then they would have to inquire what was the fair market value of the property at and immediately after the location and construction of the railroad as affected by it, with the railway upon the street, built as it is, properly operated as ordinarily railroads are. The difference between those two values would then be the just compensation which the constitution requires a jury to give a party who is injured.

In ascertaining this difference of market values there must always be a fair and just comparison of the advantages and

Charge of Court below.

disadvantages resulting from the location and construction of the road; but the advantages, the law books say, the advantages to be considered are such only as are special to the property affected, and the disadvantages such as are actual, not speculative; they must be such as substantially affect the market value of the land, and in no case are speculative damages allowed. In passing upon the question of inconvenience in this case, arising from the increased difficulty of access to the property, the ordinary danger from accidental fires to buildings not resulting from negligence is all to be considered. You will observe that. "The danger from accidental fires to buildings not resulting from negligence" is the point. Where a fire results from the negligence of a railroad company, there is a special remedy given; and therefore the law does not permit anything else but the ordinary danger from an accidental fire to be taken into consideration, and then only as it may affect the market value of the property. In a general way, you take into consideration all such matters as, owing to the peculiar location of the road, may affect the convenient use and enjoyment of the property. [There must be taken into consideration the effect of the railroad there, operated in the ordinary way, locomotives running over it, smoke and dirt that may be made by them; all such matters, however, only as they may affect the market value of the property;] [4] and all the advantages and disadvantages are to be considered in comparison only as they may affect the market value of the land. The object in every case is to ascertain the difference in the market value. Everything which gives land its intrinsic value is a proper subject for consideration. Land may be applied to various purposes, and for various objects; and the construction of a railroad through a property may perhaps destroy its value as a dwelling-house, and yet it may increase its value for manufacturing purposes; and therefore the law says that in considering the matter, it is the general market value for any purpose that will induce persons to purchase, that is the true test.

The principles of all these rules will apply to the present case, with this exception, that you are not to allow any compensation to the plaintiffs for the injury to the interests of their tenants. The tenants have a right of action for any injury done to their interest. You will recollect the testimony of the

witnesses, that on certain parts of this property there were tenants for the period of one year. You will recollect the testimony on that point better than the court, but all those tenants would have a right to recover for the injury that might be done to their interests in that land which they possessed for that one year. You will, therefore, exclude from your consideration any possible injury which the tenants' interests may have suffered; and you will consider, in estimating the amount of your verdict, the amount of this just compensation which the law gives, the interest of the plaintiffs alone, carefully excluding any injury which the tenants may have sustained.

On this question of market value in this case there is a wide difference of opinion. The plaintiffs base their estimates of the market value of the whole property, without any consideration of the interests which the tenants may have possessed in it for the one year. Their estimates upon that basis run from $2,500, I believe there is one at $2,500, up to $3,500. On the other hand, the defendants say that the market value of this property has not been injured at all. Some of their witnesses say that it has been increased; that previous to the construction of the defendant's railroad there were two other railroads passing along there, which rendered the street dangerous, and which also subjected these properties to the annoyance of smoke and dirt; and that that may have affected their market value, and that the running of this railroad down the street, and the corresponding special advantages resulting specially to this property, were of such a nature that all disadvantages or annoyances are counter-balanced; and that, therefore, the general market value of this property has not been affected. Now, if that were so, the verdict should be for the defendant; if otherwise, then you will ascertain the difference in market value of the interests which the plaintiffs have in that property, taking as your guide the rules which I have laid down to you. [Should you come to the conclusion as to a certain amount which should be allowed plaintiffs, you will add to that amount interest from June, 1885, to the present time.] [7]

The jury returned a verdict in favor of the plaintiffs for $2,515.33. A rule for a new trial having been discharged, the defendant company took this writ, assigning as error:

1. The refusal of defendant's offer.[1]
2. The refusal of defendant's offer.[2]
3. The admission of plaintiffs' offer.[3]
4. The part of the charge embraced in [ ][4]
5. The answer to the defendant's point.[5]
6, 7. The parts of the charge embraced in [ ][6] [7]

*Mr. Cyrus G. Derr* (with him *Mr. Isaac Hiester*), for the plaintiff in error:

1. The damages in this case, if any, are payable to him who owned the property in question at the time of the location of the railroad, and not to the plaintiffs below, whose title was acquired after such location, though before the actual construction of the road. This position is supported by the entire context of § 11, act of February 19, 1849, P. L. 84, and has been established as a rule by the decisions of this court: Wadhams v. Railroad Co., 42 Pa. 310; Neal v. Railroad Co., 2 Gr. 138; Pittsb. etc. Ry. Co. v. Commonwealth, 101 Pa. 192; Beale v. Penn. R. Co., 86 Pa. 509; O'Brien v. Railroad Co., 119 Pa. 184. The necessity for fixing a time when the landowner's right to the damages shall accrue and become perfect, is sufficiently obvious. If such right is to become perfect only with the completion of the road, the landowner, in cases of difficult construction, would be greatly injured by the enforced delay. Besides, it would put it in the power of the corporation indefinitely to defer payment by intentionally refraining from a completion of the work.

2. When a witness is called, in a case like this, to testify as to differences in market value, he may, upon cross-examination and for the purpose of testing his knowledge, be asked as to the prices paid for particular property in the same vicinity and at about the same time, and this though the defendant company were themselves the purchasers in such sales. The doctrine is fully defined in East. Penn. R. Co. v. Hiester, 40 Pa. 56.

3. The damages which, under the constitution and acts of assembly, a property owner may recover from a company constructing a railroad upon a public street, are such only as result from the construction, as distinguished from those which result from the operation of the railroad, and such claims for damages are limited to properties which front on the street occupied by

the railroad, and cannot be extended to properties located on cross streets and away from the railroad. (*a*) Before the adoption of the constitution of 1874, no damages could be recovered for the location of a railroad upon a public street, unless the case came within the proviso of § 10, act of February 19, 1849, P. L. 83, which is fully construed in New Castle etc. R. Co. v. McChesney, 85 Pa. 522. (*b*) The language of § 8, article XVI. of the constitution, like the language of the act of 1849, limits the right of property owners to damages for such injuries as result from the construction of the road merely, not resulting from the lawful operation of the road: Penn. R. Co. v. Lippincott, 116 Pa. 472.

4. Where in a case like this under consideration, the declaration describes the plaintiff's property as a reversionary interest, the estimates of witnesses called to support the averments should be estimates of the value of the reversionary interest and not of the value of the entire property, including the leasehold estates; and, when there is no testimony as to value offered by plaintiffs, excepting such as is predicated of the entire property, including the particular estates, the jury are without the information requisite, and there can be no recovery.

5. It was error in this case to instruct the jury to add interest to "the amount which should be allowed plaintiffs." The case is not one in which interest should be allowed. There was no certain and ascertained sum due from the railroad company to the plaintiffs which the company could have tendered and paid: Weir v. Allegheny County, 95 Pa. 413.

*Mr. H. Willis Bland* (with him *Mr. Benj. F. Dettra*), for the defendants in error:

Section 8, article XVI. of the constitution of 1874, has been construed in a number of cases. Reading v. Althouse, 93 Pa. 404, and Pusey v. Allegheny City, 98 Pa. 526, show the general scope of this new constitutional provision, and authoritatively declare that it creates new elements of damage where private property is taken, injured or destroyed for public use. This new rule of damages has been several times applied by this court to cases similar in instance and identical in principle with ours, and the claimants have uniformly been allowed to be within the rule established by the constitution. The principal cases are:

Penn. R. Co. v. Duncan, 111 Pa. 352; Phil. etc. R. Co. v. Patent, 17 W. N. 199; Pittsb. Junc. R. Co. v. McCutcheon, 18 W. N. 527; North. Cent. Ry. Co. v. Holland, 117 Pa. 613.

1. All the cases which hold that the right to damages accrues to the land-owner at the time of the location, are cases of the actual taking of the land under the general railroad law, where in legal contemplation the land is condemned and appropriated to public use, and, the land-owner having been by the law divested of his land, is immediately invested with a right to compensation, the equivalent in money. Our case is not ruled by those cases, but by the principle of a consequential injury at common law, governed by the cases: Schuylkill Nav. Co. v. Thoburn,7 S. & R. 420; Zimmerman v. Union Canal Co., 1 W. & S. 353; Mumma v. Railroad Co., 1 Pears. 65; O'Brien v. Railroad Co., 119 Pa. 190.

2. The question at issue in the matter covered by the second assignment of error was the market value of the Ziemer property before the construction of the road, and after the construction, as affected by the construction, and not how the market values of other property in the neighborhood had been affected. How the plaintiffs here could be affected by proofs of what other people saw fit to settle for, it is impossible to understand: East Penn. R. Co. v. Hiester, 40 Pa. 56.

3. Evidence was clearly admissible to show the effect of the construction of the railroad upon the property as a place of business, " and not for the purpose of recovering any loss by reason of the diminution of trade: " Pittsb. etc. R. Co. v. Vance, 115 Pa. 325; West. Penn. R. Co. v. Hill, 56 Pa. 460. Nor was it error to permit the jury to take into account the ordinary and usual operation of the road as a necessary element of the effect of its construction: Pittsb. Junc. R. Co. v. McCutcheon, 18 W. N. 528; Penn. R. Co. v. Duncan, 111 Pa. 352; Phil. etc. R. Co. v. Patent, 17 W. N. 199.

4. The charge of the court carefully limited the recovery, under the evidence, to damages for the injury to the reversionary interest. " Nor was there error in charging the jury to allow interest. If the plaintiff was entitled to compensation by reason of her property being taken at a particular time, she was certainly entitled to interest as a compensation for the wrongful detention: " Old Colony R. Co. v. Miller, 125 Mass.

1; Railroad v. Gesner, 20 Pa. 242; Del. etc. R. Co. v. Burson, 61 Pa. 369; Pierce on Railroads, 220.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an action brought in the court below against the railroad company by the widow and heirs of Samuel Ziemer, to recover damages for what are known as consequential injuries, resulting from the construction of defendant's road.

The plaintiffs are the owners of a property situate on the corner of Canal and Bingaman streets, in the city of Reading. The road of the defendant company has been constructed at grade over the said Canal street, in front of plaintiffs' property. The road takes a part of the pavement, and the track is within about twenty feet of one of the buildings, and it was alleged interferes seriously with the drainage, besides rendering access to a portion of the property dangerous. The title of the plaintiffs below was acquired on June 11, 1884, by descent from Samuel Ziemer, who was the husband of Margaret Ziemer, and the father of the other plaintiffs.

Upon the trial below the defendant offered to prove that the route for the construction of the said road was duly located and marked with construction stakes, prior to the time of the decease of the said Samuel Ziemer, and that, therefore, the action should have been brought by his personal representatives, and not by his widow and heirs. The court rejected this offer. See first assignment. We think the evidence was properly rejected. The action was for consequential injuries. There was no taking of any portion of the plaintiffs' property. The plaintiffs' ancestor was not injured by the setting of construction stakes in a public highway. They were not set on his property, nor was anything belonging to him taken or injured thereby. In such cases there can be no legal injury for the erection or construction until such erection or construction has commenced.* The work might have been abandoned before a beginning had been made. In such case the property owner would have had no cause of action. There is no analogy between this case and the location of a railroad over a man's land. In the latter instance the land has been taken and appro-

---

*Cf. Lafferty v. Railroad Co., ante, 297.

priated to public use; the right of the land-owner to sue for damages is complete, and he may recover for the location and for the subsequent construction: Wadhams v. Railroad Co., 42 Pa. 303; Beale v. Railroad Co., 86 Pa. 509.

The second assignment is without merit. The defendant company offered to prove what they had paid to other property owners along the same street for the privilege of laying their tracks upon it. The damages which the plaintiffs had sustained could not be measured by such a standard as this. What particular owners were willing to accept, or had accepted, from the company by way of settlement or compromise, could not affect the plaintiffs. Aside from this, to render such testimony of any value the conditions must be shown to have been similar. This would involve as many issues before the jury as there were persons who had been settled with.

It is sufficient to say in answer to the fifth assignment that the learned judge below distinctly told the jury that they were not to allow compensation to the plaintiffs for any injury to the interests of their tenants. There was no objection to the evidence offered upon this point, and we must assume the verdict was only for damages to plaintiffs' reversionary interest.

The portion of the charge referred to in the seventh assignment is technically inaccurate, although substantially correct. In cases of this kind interest is not allowed as interest, but it is usual to instruct the jury to increase the damages by that amount. In other words, interest is allowed as damages. If it were otherwise a person whose property has been taken, injured, or destroyed would not receive full satisfaction: Old Colony Railroad Co. v. Miller, 125 Mass. 1; Del. etc. R. Co. v. Burson, 61 Pa. 369.

The merits of this case—that is to say, the right of the plaintiffs to recover for consequential injuries, is ruled by Railroad Company v. Walsh, just decided. It is unnecessary to go over the ground again in this opinion.

Judgment affirmed.