# Shinzel *v.* Bell Telephone Company of Philadelphia, Appellant.

*Telephone company—Damages to landowner—Municipal use—Eminent domain.*

The erection of telephone poles and wires in city and borough streets, under charter rights, with municipal consent, and in conformity to municipal regulations, is not in itself an additional burden for which the owner of the fee is entitled to compensation. It follows from this, that unsightliness of the poles, and noises which are the ordinary incident of the lawful and non-negligent maintenance of the poles and wires and the conduct of the busi-

ness, do not constitute a special injury for which damages are recoverable; but appreciable interference with light, air, access or drainage is an additional burden to which the land of the abutting owner cannot be subjected without rendering to him just compensation.

In an action against a telephone company by a landowner claiming to recover injury to his drainage by reason of the erection of a telephone pole, the question of the alleged injury will not be submitted to the jury where the only evidence on the subject is, that water backed into the plaintiff's cellar, and that the pole was erected within about eight inches of the drain, without anything to show a connection between the two conditions. An additional ground for such ruling is found where there is no evidence as to the specific amount of the loss caused by the injury to the drainage.

Where a large telephone pole designated as distributing pole of a diameter of sixteen inches is planted opposite to an alley, at a point distant from the house line between nine and ten feet, and it appears that by reason of the pole it was impossible to take long pieces of timber and lumber through the alley for the purpose of repairs and alterations, the owner is subjected to an injury that is not temporary, and for which he is entitled to damages.

Argued Dec. 11, 1905. Appeal, No. 100, Oct. T., 1905, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1901, No. 1,595, on verdict for plaintiff in case of Charles Shinzel v. Bell Telephone Company of Philadelphia. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass to recover damages alleged to have been suffered by the erection of a telephone pole. Before BRÉGY, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[If the erection of this pole injured Mr. Shinzel in that it deprived him of the light and air that he otherwise would have had, that it interfered with the comfort of his house by reason of noises from what is called the drum, if it interfered with the use of his alley, and caused dampness in the cellar, he is entitled to be compensated for that. You are to fix that compensation with the light of the evidence upon that subject.] [4]

[Mr. Hasson was the only man who testified upon that subject, and he has attempted to give you what he thought the damages are and the reasons therefor. You are to determine whether the reasons appeal to your judgment and whether they are to be followed to their conclusion.] [5]

If the erection of the pole did not damage Mr. Shinzel, of course he has no cause of action here, and the verdict ought to be against him.

Defendant presented these points:

1. A telephone company, duly incorporated under the laws of Pennsylvania, and authorized by ordinance of councils of the city of Philadelphia, to erect poles and wires in the conduct of its business on its public streets, may locate a pole for such purpose with the assent of the city authorities on a public street in front of the property of a private owner, without being responsible to such owner for damages. *Answer:* Refused. [1]

2. The erection of poles and wires on the streets of the city of Philadelphia by a telephone company, duly incorporated for that purpose, and duly authorized by ordinance of councils of the city to erect such poles and wires, may be made at such points on the streets as shall be approved by the proper city authorities. Such erection is not an easement for which the property owner has any right to recover. *Answer:* Refused. [2]

3. Your verdict should be given for the defendant. *Answer:* Refused.

Verdict and judgment for plaintiff for $950. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*John G. Johnson*, for appellant.—A telephone company in cities, towns and boroughs, may locate its poles and wires on public streets without any liability for damages because of the taking of the property of the abutting owner: Livingston v. Wolf, 136 Pa. 519; Penna. Telephone Co. v. Hoover, 209 Pa. 557; Lockhart v. Ry. Co., 139 Pa. 419; Sterling's App., 111 Pa. 35; Rafferty v. Central Traction Co., 147 Pa. 579; York Telephone Co. v. Keesey, 5 Pa. Dist. Rep. 366; Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62; Dempster v. United Traction Co., 205 Pa. 70.

A telephone company which locates its poles and wires in cities, towns or boroughs, is only liable for such damages as will be occasioned the abutting owner, by interference with access to his property, or by depriving him appreciably of light

or air, or by inflicting some physical injury in or by means of the construction: McDevitt v. Gas Co., 160 Pa. 367; Provost v. Water Co., 162 Pa. 275.

A telephone company is not responsible for damages resulting from the doing of its business in a proper way, in the operation of its poles and wires: Penna. R. R. v. Lippincott, 116 Pa. 472; Penna. R. R. v. Marchant, 119 Pa. 541; Jones v. R. R., 151 Pa. 30; Penna. Co. for Ins., etc. v. R. R., 151 Pa. 334; Hartman v. Incline Plane Co., 159 Pa. 442.

It is error to permit a jury to allow damages for alleged injuries by the construction of poles and wires in particulars where there is no proof of the fact of damage or where there is no testimony as to the amount of the damage.

It is error to instruct a jury that it may find a verdict based upon an estimate of damages given by a witness who admits that such estimate rests upon a basis, which basis was improper.

*John A. Clark*, for appellee.—A telephone company has the right of eminent domain upon the streets of a city: Penna. Telephone Co. v. Hoover, 24 Pa. Superior Ct. 96; Pfoutz v. Penna. Telephone Co., 24 Pa. Superior Ct. 105; Brown v. Electric Light Company, 208 Pa. 453.

Under the provisions of section 8, of article 16, of the constitution of the state of Pennsylvania, the owner of a property on a public street in a city is entitled to just compensation from a telephone company, which under the right of eminent domain, has injured his property by the construction of its works in the erection of a terminal pole in front of his dwelling house.

OPINION BY RICE, P. J., June 30, 1906:

The plaintiff is the owner of a lot, with a three-storied dwelling house thereon, situate on the east side of Lawrence street, in the city of Philadelphia, and under his deed has the right to the use of, and the right to build over, an alley, twenty-two inches in width, laid out and opened for the accommodation of his premises and the adjoining premises on the north. At the height of about seven feet the houses upon these two lots project over this alley and adjoin.

The defendant was duly chartered under the laws of this commonwealth, and authorized by the ordinances of the city

to run and maintain its wires over and through the streets of the city, for the purpose of rendering telephone service to the public.

In 1900, under a permit duly issued in accordance with the city ordinances, the defendant erected between the house line and the curb, and directly in front of the entrance to the alley, a terminal, or, as sometimes designated, distributing, telephone pole, sixteen inches in diameter at the sidewalk, about fifty-nine feet high, and distant from the house line between nine and ten feet. Alongside the pole is a metal tube in which cables are carried up, and at the top the wires, which radiate in different directions, are protected by an iron hood or drum.

We do not understand it to be disputed that in height, diameter, location and other particulars the pole conforms substantially to the permit, and to the regulations of the department of public safety therein referred to ; at any rate, no variance of that kind is set up, either in the pleadings or in the appellant's brief, as a ground of recovery. Nor do we find in the plaintiff's statement of claim any specific averment of negligent or improper construction or operation, and no evidence was adduced to support such averment, unless it be that which relates to the drainage pipe.

Before discussing the main question we shall consider the evidence bearing upon the alleged interference with the drainage as an element of the damages recoverable in this action. It is necessary to consider this question, because the learned judge charged the jury (fourth assignment) that if the erection of the pole injured the plaintiff, in that it caused dampness in the cellar, he was entitled to be compensated for that. There was evidence that owing to something wrong with the plaintiff's drain the water backs into his cellar. He testified : " I say our drainage pipe must be broken with this pole, or by this pole, and the drainage goes back again in our cellar." His witness, Mallo, who is a plumber, testified that he thought a vent box running down to the trap had been broken, but later, when asked to give his reason for this belief, he answered : " Well, they had had water in the cellar constantly, and therefore I think there was something wrong with the drain." He testified further that the drain is within about eight inches from the pole, and that he did not dig down to ascertain the cause and

location of the leak, because he feared, if he " dug up the pavement it might cave in, and the pole might slide and cause a lot of trouble." The evidence above summarized would, perhaps, warrant a finding that the backing of the water was due to a defect in the drain, and is reconcilable with the plaintiff's theory that the pipe was broken by the defendant's employees in setting the pole in the ground, or in making the excavation therefor. But it is not enough that the testimony may be reconciled with his theory; it is also reconcilable with other theories, as shown by the cross-examination of the witness Mallo. True, the plaintiff expressed a positive opinion as to the cause of the backing of the water. But he was not qualified to testify as an expert, even if the subject of inquiry was open to the introduction of expert testimony. Therefore, his conjecture or opinion does not add to the probative value of the facts testified to. We do not say that the fact that the pipe was broken in the manner last stated could not be established by circumstantial evidence. Unquestionably it would be competent for a jury to find the fact from that kind of evidence, and that, too, notwithstanding the direct and positive testimony to the contrary of the defendant's witness who superintended the erection of the pole. But the burden of proof was on the plaintiff. It is not a case where the maxim res ipsa loquitur applies. The facts that water backs into the plaintiff's cellar, and that the pole was erected within about eight inches of the drain, are well supported by testimony, but the connection between the two conditions is left to conjecture. These facts, without more, do not furnish ground for inferring with reasonable certainty that the pipe was broken by the defendant in the manner alleged. " Since the scintilla doctrine has been exploded, both in England and in this country, the preliminary question of law for the court is, not whether there is literally no evidence, or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence from which the jury can properly find the question for the party on whom the burden of proof rests, it should be submitted; if not, it should be withdrawn from the jury : " Hyatt v. Johnston, 91 Pa. 196. Applying this well-settled rule, we are of opinion that the question of the defendant's liability for the

dampness of the plaintiff's cellar ought not to have been submitted to the jury.  Another objection urged against submitting the question to the jury is, that no evidence was introduced from which the jury could determine the pecuniary loss suffered by the plaintiff in consequence of this specific injury. This objection has not been satisfactorily answered, and as the case must go back for retrial, it is proper that we should consider it.  The only evidence adduced by the plaintiff upon the question of damages was as to the depreciation of the property in market value.  This is the proper measure of damages for a permanent injury, but we think the evidence would not warrant a finding that the specific injury under discussion was of that nature.  Assuming that there was a break in the pipe and that the defendant is liable in damages for it, and for the consequent flooding of the plaintiff's cellar, this was an injury of a temporary and remediable nature, and the measure of damages upon that score would be the cost of remedying it and compensation for the loss, or impairment, of the use of the premises meantime.  We find no evidence as to the amount of such damage; therefore the objection is sustained.  A third objection is, that interference with drainage is not specified in the statement of claim as a ground of recovery.  But the substantial cause of action was the injury to the plaintiff's premises by the erection and maintenance of the pole.  Having set forth certain particulars in which his enjoyment and use of them was impaired, he adds, " and in various other ways."  This was notice to the defendant that such damage as naturally or necessarily arose from the act complained of would be claimed, and even at common law the general rule was, that under the allegation of " other wrongs," etc., damages and matters which naturally arose from the act complained of could be given in evidence.  This subject is very fully discussed and the authorities relating to it are cited in Martachowski v. Orawitz, 14 Pa. Superior Ct. 175.  We are not prepared to say that the rule under our statutory system of pleading is stricter.  Doubtless, if a bill of particulars had been applied for, the plaintiff would have been required to furnish it.  But as the defendant, without making such application, pleaded the general issue, the objection that the statement of claim is not broad or specific enough to support a recovery for interference with the

drainage, if that was the natural result of locating the pole in that place, ought not to be sustained after a trial on the merits.   Whatever may be the rights of a telephone company in the streets of a city, the right to interfere materially with the drainage of the premises of an abutting owner against his consent, and without compensating him, is not one of them.   See Penna. Schuylkill V. R. R. v. Ziemer, 124 Pa. 560 ; Chatham Street, 191 Pa. 604.   The plaintiff's priority of occupancy of the subsurface of the street with his drain gives him standing, which he would not have otherwise : Provost v. New Chester Water Co., 162 Pa. 275.   Our conclusion that interference with drainage was not to be considered by the jury as an element of the damage recoverable in this action is based, not upon the ground that it is damnum absque injuria, nor upon the insufficiency of the statement of claim, but upon the insufficiency of the evidence.

The plaintiff claimed further that the pole is an injury to him, in that it (1) deprives him of the light that otherwise he would have ; (2) impairs access to his premises through the alley ; (3) interferes with the comfort of his house by reason of noises from what is called the drum.   It is argued by the appellant that owing to the position of the pole it cannot affect the light of the premises at any season of the year or at any hour of the day.   But the plaintiff testified positively from his experience and observation before and after the erection of the pole that it does darken some of his windows nearest to it. We cannot say that this testimony was so obviously absurd that the court ought to have withheld the question from the jury.   In support of the allegation of interference with access, the plaintiff showed that, by reason of the narrowness of the entrance to the alley and the position of the pole directly in front of it, it was impossible to take very long pieces of timber and lumber through it for the purpose of certain repairs and alterations he made in the rear.   This testimony based on actual experiment shows, not only the inconvenience the plaintiff was put to on that particular occasion, but also that access to his premises will be interfered with so long as the pole is maintained in its present position.   Therefore it is not a mere temporary injury that is alleged.   The impairment of access may not be very serious, but it is not so slight that the law will not

take cognizance of it.   The testimony is to the effect that, owing to the hood or drum at the top of the pole which protects the wires, whistling and humming sounds are produced when the wind blows which are annoying to the inmates of the house.   But we find no evidence that this is due to negligent or improper construction or operation.   For aught that is alleged in the pleadings or shown by the evidence, it is an ordinary incident of the lawful and nonnegligent maintenance of the pole and wires for the purpose of the business the defendant's charter authorizes it to conduct.   Another ground— though not specifically mentioned in the statement of claim— upon which the plaintiff claimed the right, and was permitted, to recover, is that a terminal or distributing telephone pole of the size and height of this one is an unsightly object—a disfigurement of the premises in front of which it is maintained— and that by reason thereof the market value of the plaintiff's premises was lessened.   Indeed, the only witness called by the plaintiff, who testified as to the amount of the pecuniary damages, admitted upon cross-examination that this was the principal ground for his estimate of the depreciation.   It is true the learned judge did not expressly mention this as an element of the damages recoverable in the action, but that the jury were justified in supposing that they could so consider it is apparent from this except from the charge, which is the subject of the fifth assignment: " Mr. Hasson was the only man who testified upon that subject (compensation for damages), and he has attempted to give you what he thought the damages are and the reasons therefor.   You are to determine whether the reasons appeal to your judgment and whether they are to be followed to their conclusion."

The right of the defendant to erect and maintain the pole and wires as part of its telephone system without the consent of the plaintiff, upon making or securing just compensation, is not disputed; it is argued by his counsel that the defendant possesses the right of eminent domain as to his land lying within the limits of the street, and this view of the law is in harmony with Penna. Telephone Co. v. Hoover, 24 Pa. Superior Ct. 96; s. c., 209 Pa. 555, and Pfouts v. Penna. Telephone Co., 24 Pa. Superior Ct. 105.   But this is not the point upon which the case turns.   Proof that, by reason

of the construction and operation of its works by a corporation invested with the privilege of taking private property for public use, property of another in proximity thereto is worth less than it was before the construction, does not, standing alone, establish liability of the corporation to respond in damages to the extent of the depreciation: Penna. R. R. Co. v. Lippincott, 116 Pa. 472; Penna. R. R. Co. v. Marchant, 119 Pa. 541. But it is argued that in this case there was a taking within the meaning of section 8, article 16, of the constitution, and therefore the defendant is liable for all the damages, direct and consequential, resulting therefrom. And, applying the doctrine of analogous cases, there would be such liability if this were a country road. "By appropriating land for the specific purpose of a common highway, the public acquires a mere right of passage with the powers and privileges incident to such right. The fee still remains in the landowner notwithstanding the public have acquired a right to the free and uninterrupted use of the road for the purpose of passing and repassing; and he may use the land for his own purposes in any way that is not inconsistent with the public easement. He may, for example, construct underneath the surface passage ways for water and other purposes, or appropriate the subjacent soil and minerals if any, to any use he pleases, provided he does not interfere with the rights of the public. In other words, the only servitude imposed on the land is the right of the public to construct and maintain thereon a safe and convenient roadway, which shall at all times be free and open for public use as a highway. It is in view of this servitude that damages may be awarded to the landowner. Laying and maintaining a pipe line, at the ordinary depth under the surface, necessarily imposes an additional burden on the land, not contemplated either by the owner or by the public authorities, when the land was appropriated for the purpose of a public road. It is a burden, moreover, which to some extent, at least, abridges the rights of the landowner in the soil traversed by the road, and hence it is a taking within the meaning of the constitutional provision requiring just compensation to be made for property taken, injured, or destroyed. (Const. art. XVI., sec. 8.) In some cases it is possible the injury may be consequential as well as direct. The constitutional provision em-

braces both:" Sterling's Appeal, 111 Pa. 35. The principle has been recognized in many other cases, including: Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506, and Penna. Telephone Co. v. Hoover, 24 Pa. Superior Ct. 96, and is the settled rule in this commonwealth with respect to public roads in rural districts. But in the same case in which the rule was stated in the language above quoted, Justice Sterrett said: "As to streets and alleys in cities and boroughs, there are reasons why a different rule to some extent should prevail; but that question is not before us." There is abundant authority for this distinction, and for saying as we did in Cooke v. Central District, etc., Telegraph Co., 21 Pa. Superior Ct. 43, that a street in a city or borough is subject to a greater servitude in favor of the public than a road in the open country. For example, it has been held that the construction of a street passenger railway, when authorized by law, and municipal ordinance, upon a city or borough street, does not impose an additional servitude upon the property fronting on the street: Lockhart v. Craig St. Ry. Co., 139 Pa. 419; Rafferty v. Central Trac. Co., 147 Pa. 579; Thomas v. Inter-County Street Ry., 167 Pa. 120, while in townships it is an additional servitude to which the land of the abutting owner cannot be subjected without his consent: Penna. R. R. v. Montgomery Pass. Ry. Co., 167 Pa. 62; Dempster v. United Trac. Co., 205 Pa. 70. We have seen what was decided in Sterling's Appeal as to gas pipes in country roads, but it has been held that the laying of such pipes, McDevitt v. People's Nat. Gas Co., 160 Pa. 367, or of water pipes, Provost v. New Chester Water Co., 162 Pa. 275, is included in the ordinary uses to which streets in municipalities may be put, and for which the adjoining landowner is not entitled to compensation as for a new servitude. These two cases show beyond controversy that the present case is not controlled by the reasoning upon which the courts of some of the other states of the union have held that the placing of telephone poles and wires in a street imposes an additional servitude on the land. In one case we find the reason stated in these words: "They are not placed in the street to aid the public in their right of free passage, nor to facilitate the use of the street as a public way, but to aid in the transmission of intelligence." In another case it is declared: "The primary use of a street or highway

is confined to travel or transportation." Such is not the law of Pennsylvania as to streets in cities and boroughs. The reasons for distinguishing between them and country roads were thus stated in McDevitt v. People's Natural Gas Co., 160 Pa. 367: " These reasons are obvious. The necessity for drainage ; for a water supply ; for gas for purposes of lighting ; for natural, or fuel gas, for heat; for subways for telegraph and other wires ; and for other urban necessities or conveniences, give to the municipality a control over the subsurface that the township has not. Property in a city is no less sacred than property in the country. The title of the owner is neither better nor worse because of the location of his land. But its situation may subject it to a greater servitude in favor of the public in a large, compactly built city than would be imposed upon it in the open country. The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewers, gas and water mains, and any other urban uses. In taking the streets for these necessary or desirable purposes it is acting not for its own profit, but for the public good. It is the representative of the inhabitants of the city, considering their health, their family comfort, and their business needs ; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers. If the city abridges his control over the soil in and under the streets, it compensates him by making him a sharer in the public advantages that result from proper drainage, from an abundant water supply, from the general distribution of gas, and the like." Again in Dempster v. United Trac. Co., 205 Pa. 70, the late Justice DEAN said : " It is settled law, that abutting owners on streets and alleys in cities and boroughs have no claim for damages by reason of the appropriation of the surface or subsurface for public improvements to the advantage and benefit of all the inhabitants ; it is much easier to say that such is the settled law than to give a wholly satisfactory reason for it ; the one usually given both in McDevitt v. People's Nat. Gas Co., 160 Pa. 367, and in many cases preceding it, is, that the borough is the representative of the inhabitants, considering their health, their family comfort and their business needs ; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers. If it abridges his control

of the soil, it makes him a sharer in the public advantage result-
ing from the appropriation.   In a legal sense, it is an invasion
of his rights, but that is damnum absque injuria.   But whether
the reasoning to sustain the law be satisfactory or not, as a fact,
the law is so deeply imbedded and firmly fixed as a rule of
action, that it is not likely to be disturbed, at least in our day."
The doctrine of the McDevitt case is in accordance with pre-
vious utterances of the court in Lockhart v. Craig Street Ry.
Co., supra, and Wood v. McGrath, 150 Pa. 451, and it would
be too narrow a view for us to take of it to hold that what was
said as to any other kind of urban use, except the maintenance
of pipes for supplying gas to the inhabitants, is obiter dictum.
The conclusion that this is an urban use is based on reasoning
which would be fallacious, if the other uses expressly men-
tioned in the opinion of the court are not so.   And, if the use
of a city street for the purpose of communication among the
inhabitants by means of the telephone is included within the
servitude in favor of the public, there is no sound principle
upon which it can be held that such use is confined to the sub-
surface.   As well might it be said that although the use of
the street for passage and transportation by means of a pas-
senger railway is not an additional servitude, the erection of
poles and wires on the surface for the transmission of the mo-
tive power is so, and that, as we have seen, would be directly
in conflict with the decisions.

The principal question raised in this case has not been de-
cided by our Supreme Court in a case involving the same state
of facts.   But the general principles, which have received rec-
ognition in the cases above cited, as to the servitude in favor
of the public in city and borough streets, lead to the conclusion
that the erection of telephone poles and wires in such streets,
under charter right, with municipal consent, and in conformity
to municipal regulations, is not in itself an additional burden
for which the owner of the fee is entitled to compensation.   It
logically follows, that unsightliness of the poles, and noises
which are the ordinary incident of the lawful and nonnegligent
maintenance of the poles and wires and the conduct of the
business, do not constitute a special injury for which damages
are recoverable.   In neither of these particulars is there a sub-
stantial and meritorious distinction between the construction

and operation of a telephone line, and the construction and operation of an electric street railway, with its trolley wires and poles. Noise is an inseparable incident of many lawful uses to which a city street may be put, without the consent of the abutting landowners, and where such use is not in itself an additional servitude the resulting discomfort from noise is damnum absque injuria. See Jones v. Erie & Wyoming Val. R. R. Co., 151 Pa. 30, at page 49.

But the cases above cited, as well as others, recognize this qualification as to elevated structures, that appreciable interference with light, air, access or drainage is an additional burden to which the land of the abutting owner cannot be subjected without rendering to him just compensation. The principle is thus stated in the case last cited: "The permission of the municipality to cross or enter upon one of its streets, whether upon the surface or above or below it, is an authority to the grantee to enter within the limits affected by the public easement and in subordination to it. The grantee may lawfully enter under this permission, but his rights are subject to the same limitations that have been already pointed out. He must impose no new servitude upon the land. If he does he takes not only what the municipality had to grant, but he takes from the owner in addition. In such case, as we have seen by the cases already cited, the owner is entitled to compensation for the new servitude to which he is subjected." See also Duncan v. Penna. R. R. Co., 111 Pa. 354; Penna. Schuylkill V. R. R. Co. v. Walsh, 124 Pa. 544; Penna. Schuylkill V. R. R. Co. v. Ziemer, 124 Pa. 560.

The affirmation of the defendant's points, without accompanying with it the qualification last mentioned, might have been misunderstood by the jury as implying more than was intended by them; therefore the first and second assignments are not sustained. Neither is the third, because, as heretofore shown, there was evidence that the pole is a special injury, in that it interferes with light and access. But we think there was error in the instructions, which are the subject of the fourth assignment, in permitting a recovery by reason of noises, and also in the instructions quoted in the fifth assignment, in that the effect of them was to permit a recovery upon the ground that the pole is an unsightly object. So far as the fourth assign-

ment relates to dampness of the plaintiff's cellar we refer to the discussion of that matter in a former part of the opinion.

The decisions of the courts outside of this commonwealth upon the main question are not in harmony, and it would unduly prolong this opinion to attempt to review them. They will be found collected in McCann v. Johnson County Telephone Co., 66 L. R. A. 171, decided in 1904.

Judgment reversed and venire facias de novo awarded.