## Shuster *v.* Central District & Printing Telegraph Company, Appellant.

*Telephone companies—Eminent domain—Damages—Evidence.*

In a proceeding against a telephone company to assess damages for injuries to land resulting from the construction of a telephone line along a public road passing through and over the land, witnesses will not be permitted to testify to diminution in the value of the land caused by increased danger from lightning by reason of the construction of the telephone line, where there is no testimony in the case as to a single fact founded on observation or actual experience that would warrant the conclusion that the construction and operation of the line would naturally and probably result in such increased danger to life or property from lightning as to substantially diminish the value of the land.

When the property of an individual has been appropriated for public use, his right to recover compensation, commonly called damages, therefor, is perfect, and he may proceed to enforce it as soon as the act of appropriation is complete. He is not required to await even the beginning of the actual work of construction on the ground. It is also true that he not only may but must recover in one proceeding, even when thus promptly begun, all of the compensation intended by the law as a satisfaction for the injuries resulting from the construction and use of the prospective improvement, or the subjection of his property to a servitude from which it was formerly free.

It would therefore seem to follow that in such cases the injuries for which compensation is to be made are those and only those which can be ascertained and valued as well before they actually occur as afterwards. This is but another way of saying that tribunals awarding such compensation, will confine their attention to injuries which are real and actual, and which although they have not occurred, will so naturally, usually and probably follow the appropriation of the land and its subjection to the new public use, that their happening can be reasonably foreseen, their extent measured and their equivalent in money ascertained. To go beyond this limit would be to step at once into the do-

main of speculation or fancy and compel courts and juries to estimate, without rule or standard, the present cash value of all the apprehensions of future injury the imagination of a plaintiff or his witness might suggest.

Where a jury returns an excessive verdict in a land damage case, and it appears that there is testimony which in the judgment of the appellate court tends to fix the actual damages, such court may affirm the judgment conditionally, upon the plaintiff filing of record within a time stated, a release of so much of the verdict and judgment as will reduce them to the amount of the actual damages ascertained in the manner stated.

Argued May 14, 1907.    Appeal, No. 145, April T., 1907, by defendant, from judgment of C. P. Butler Co., Dec. T., 1904, No. 16, on verdict for plaintiff in case of Grant Shuster v. The Central District & Printing Telegraph Company.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Judgment modified.

Appeal from award of jury of view.    Before GALBREATH, P. J.

When William Nolf was on the stand he was asked this question :

" Q. That makes this damage $4,280 ; you say $500 you allow for the telephone poles standing on the highway, is that correct?    A. Yes, sir.    Q. That would leave $3,780 for damage by lightning ; you say the rest, $3,780, is allowed because you were afraid lightning would strike?    A. Yes, sir, on account of electricity."

Mr. McQuistion: The witness having stated that in his opinion $500 was the damage sustained by reason of the telephone poles standing along the public highway and the remainder of the damages, $3,780, was from the fear of electricity or lightning in the future, the defendant's counsel here and now move the court to strike out the testimony of the witness except that predicated upon the injury done to the highway and inconvenience by reason of the poles standing thereon, the same being speculative, remote and uncertain.

The Court: We could not strike out the testimony on that account; this is in the same category as the possible danger from fire from a railroad and the tendency or relevancy is for the jury; that will be a question for the jury.

Mr. McQuistion: And for the further reason that the witness has not given any satisfactory or substantial reason for his opinion, it being remote and a mere guess.

The Court: We will refuse the motion and receive the testimony and seal a bill. [11, 12]

Mr. McQuistion: Counsel for defendant moves the court to strike out the testimony of Wm. Swank as wholly speculative, uncertain and remote in that he states that the danger may be and damage may be sustained in the future from lightning and because the plaintiff may some time in the future want to change the location of his fences and gates; all of which testimony is uncertain and does not relate to the condition of affairs existing at the time the telephone line was constructed.

The Court: The testimony is for the jury, we will overrule the objection and seal a bill. [14]

Defendant presented these points:

The fact that a fear exists that lightning might in the future. strike the poles of the defendant company's lines and injure the property of the plaintiff cannot be considered by the jury in estimating the damages sustained by the plaintiff. *Answer:* The mere fear of damage from lightning cannot be considered by the jury unless such fear rests on that which is reasonable and probable. [6]

The depreciation of selling value of plaintiff's land by reason of the fear of lightning striking the poles and wires in the future cannot be anticipated; it is so uncertain, improbable and remote that the jury should exclude from their consideration such testimony. *Answer:* The mere fear of damage from lightning cannot be considered by the jury unless such fear rests on that which is reasonable and probable. [7]

The court charged in part as follows:

[The contention of the plaintiff is that damage has ensued to him, not only by reason of the taking of his land, or a portion of it, in the erection and construction of this line, but by reason of damages likely to ensue by reason of the proximity of the line to the plaintiff's barns and the consequent danger of lightning. Now, gentlemen, in regard to that, the testimony is for the jury; you are men of observation; you have seen telephone and telegraph lines through the country and in the

towns, and whatever knowledge you have acquired through your observation of those things and the consequent danger there may be and degree of danger that may result from the construction and maintenance of such lines through the country and through the towns, that knowledge you will bring to bear upon the facts of the case.    In other words, you will test the facts of this case and the testimony of the witnesses by that knowledge which you have, as men of affairs, who observe things as you go along.    So that we say to you now in regard to that matter of the danger of, lightning if the witness' testimony seems to rest upon substantial basis, then to whatever extent the danger from lightning that will be reasonable and probably incident to the operation and maintenance of the line, that, gentlemen, is a fact for your consideration.] [24]

Verdict and judgment for plaintiff for $307.50.   Defendant appealed.

*Errors assigned* among others were (11, 12, 14) rulings on evidence, quoting the bill of exceptions; (6, 7, 21, 24) above instructions, quoting them.

*T. C. Campbell*, with him *Lev. McQuistion* and *C. L. McQuistion*, for appellant.—The danger by lightning was purely imaginary, and evidence of it inadmissible: Lee v. Milner, 2 Mees. & W. 824; Sunbury & Erie R. R. Co. v. Hummell, 27 Pa. 99; Hamilton v. R. R. Co., 190 Pa. 51; Patten v. Northern Cent. Ry. Co., 33 Pa. 426; Kendall v. Lee, 2 P. & W. 482; Clements v. Philadelphia Co., 3 Pa. Superior Ct. 14; Wallace v. Jefferson Gas Co., 147 Pa. 205; Railway Co. v. McCloskey, 110 Pa. 436.

An essential test of the competency of the witness called to give an opinion in respect to the market value of the land is that they should affirmatively appear to have actual personal knowledge of the facts affecting the subject-matter of the inquiry: Ry. Co. v. Vance, 115 Pa. 325; Friday v. Penna. R. R. Co., 204 Pa. 405; Michael v. Crescent Pipe Line Co., 159 Pa. 99.

*John M. Greer*, with him *John B. Greer* and *Thomas H. Greer*, for appellee.

OPINION BY HEAD, J., October 7, 1907 :

The defendant, in the exercise of its corporate franchises, constructed a telephone line along a public road that passed through and over the farm of the plaintiff.   Within the limits of his property there were planted, along the roadside, twenty-three poles carrying cross arms and wires.  .The nearest pole to any of his buildings was one standing in the neighborhood of thirty feet from the barn.   The damages suffered by the plaintiff were assessed first by a board of viewers and afterwards, on appeal from their report, by a jury.   The assignments of error based on the rulings of the learned court below during the trial, although numbering twenty-four, may be all disposed of in the consideration of two questions, viz.: (a) was evidence received which tended to prove, as a basis for damages, alleged injuries to the plaintiff's land which were remote, speculative and fanciful?  (b) were witnesses permitted to give their opinions as to such damages who had not shown the qualifications necessary to render them competent for that purpose?

Under our system of jurisprudence when the property of an individual has been appropriated for public use, his right to recover compensation, commonly called damages, therefor, is perfect, and he may proceed to enforce it as soon as the act of appropriation is complete.   He is not required to await even the beginning of the actual work of construction on the ground. ·It is also true that he not only may but must recover in one proceeding, even when thus promptly begun, all of the compensation intended by the law as a satisfaction for the injuries resulting from the construction and use of the prospective improvement, or the subjection of his property to a servitude from which it was formerly free.

It would therefore seem to follow that in such cases the injuries for which compensation is to be made are those and only those which can be ascertained and valued as well before they actually occur as afterwards.   This is but another way of saying that tribunals awarding such compensation, will confine their attention to injuries which are real and actual, and which, although they have not yet occurred, will so naturally, usually and probably follow the appropriation of the land and its subjection to the new public use, that their happening can be

reasonably foreseen, their extent measured and their equivalent in money ascertained. To go beyond this limit would be to step at once into the domain of speculation or fancy and compel courts and juries to estimate, without rule or standard, the present cash value of all the apprehensions of future injury the imagination of a plaintiff or his witnesses might suggest. In Sunbury, etc., Railroad Co. v. Hummell, 27 Pa. 99, LOWRIE, J., stated the principle thus : " The law proclaims its general rule, that it has no remedy for merely accidental injuries ; and when providing for the construction of internal improvements, it has uttered no new one. It has given no compensation for the risk of bridges burning or falling ; lock or toll houses taking or communicating fire, stationary engines exploding, locomotives running off the track into a man's house, dam and locks giving way and inundating his land, or anything of that kind. . . .

" It is unreasonable to ask intelligent men to make a sworn estimate of a mere risk, which can be founded on no present data, but only on an imaginary state of things which may never exist, or which may come complicated with other things which may totally change their character."

In Clements v. Phila. Co., 3 Pa. Superior Ct. 14, SMITH, J., declared : " As elements of compensation, only those injuries are to be considered which arise so naturally as to be foreseen with reasonable certainty, and are so definite in character that their injurious effects can be presently calculated and measured, pecuniarily, with reasonable accuracy. Viewers and juries are permitted to take into account only injuries certain and definite in their nature and consequences, and substantially affecting the immediate market value of the land ; while claims for damages based on theories, conjectures and possibilities have not been allowed : Wallace v. Jefferson Gas Co., 147 Pa. 205 ; Railway Co. v. McCloskey, 110 Pa. 436."

In Wallace v. Gas Co., 147 Pa. 205, the judgment was reversed because the trial court permitted the plaintiff to prove, by the opinions of his witnesses, that where a gas line was laid above coal, the mining of the coal might result in the subsidence of the surface, the breaking of the pipe and consequent escape of gas into the mine, and that by reason of the possibility or probability of these things the property was seriously dimin-

ished in value.  Mr. Justice GREEN, after pointing out that no witness had ever observed any such injuries following the construction of a pipe line, says : " All of this testimony was merely speculative, imaginary, theoretical and the most of it extremely doubtful, and founded on possibilities which were remote and uncertain, yet the great bulk of the plaintiff's testimony on the subject of damages was made up of just this kind of proof."

In the present case William Nolf, a neighboring farmer, testified for the plaintiff that the farm of the latter contained 216 acres, and was worth $100 per acre before the construction of the telephone line, but, by reason of that construction, had suffered a diminution in value of $20.00 per acre.  This large sum he apportioned by allowing $500 for the poles standing in the road, and the entire remainder because " damages may be done the homestead any time by electricity ; . . . . the lightning would follow these wires or might heat these wires right there."  William Swank, another farmer, practically put the entire damages, fixed by him at $2,500, on the theory " there is danger of him passing through (his farm) in a lightning storm, being hit from lightning ; there isn't sufficient quantity of wire to carry the lightning off."  Neither of these witnesses, nor any other who was permitted to give estimates of the damages based on that idea, testified to a single fact founded on observation or actual experience that would warrant the conclusion that the construction and operation of that line would naturally and probably result in such increased danger to life or property from lightning as to substantially diminish the value of the farm.  The learned trial court thought this danger " is in the same category as the possible danger from fire from a railroad."  To us it seems to be an entirely different one.  It is a matter of the most common knowledge that in the ordinary movement of trains over a railroad the locomotives emit glowing sparks and cinders which have frequently ignited fences, crops and buildings.  Such a danger, resulting from constantly recurring and observed facts, is actual and substantial, and reasonable men may fairly calculate its probable consequences.

But we also know that telephone lines traverse not only the rural highways of the state but the streets of our populous

cities and towns, with their wires in close proximity to, and often in actual contact with, hundreds of buildings. If the constant use of this now indispensable factor in our everyday life has been usually or even frequently followed by the danger apprehended by the plaintiff and his witnesses, evidence of the necessary facts to make such apprehension reasonable and substantial could easily be obtained. In the absence of such facts not only was all of the testimony along this line objectionable because the damages it invited would be fanciful, remote and speculative, but the witnesses were wholly incompetent to give any opinions on the subject. Their simple guesses, founded on no special knowledge of the subject, would tend to confuse rather than to aid the jury in disposing of the real issue in controversy. The sixth, seventh, eleventh, twelfth, fourteenth, twenty-first and twenty-fourth assignments are sustained.

We have carefully examined the remaining assignments and we think it sufficient to say, without discussing them, that we are unable to discover any reversible error in the rulings therein complained of.

The construction of the defendant's line undoubtedly subjected the land of the plaintiff to an additional easement for public use. The location of the poles may have necessitated some readjustment of fences, gates, etc., so that plaintiff's access to all parts of his land would be as convenient as before. If shade trees were cut down, or other like injuries done, the witnesses complained of were competent to give opinions on all such matters. If they chose to make their estimates so extravagant that they were unable or unwilling to furnish any reasonable basis on which they could rest, this would affect the value of the opinion rather than the competency of the witness. The remedy would be with the jury rather than the court.

With the exclusion from the case of the objectionable theories already referred to, so little remains that it would seem desirable to prevent, if possible, the expenditure of public time necessary for its retrial. One of the witnesses called by the defendant, who had been selected by the court as a viewer, fixed the actual damages sustained by the plaintiff at $160. After considering all of the testimony this conclusion seems to us so reasonable that the plaintiff should have an opportunity

to accept it.   If he chooses to do so the defendant would have no cause to complain.

It is therefore ordered that if within thirty days after the receipt of the record in this case by the prothonotary of the court below, the plaintiff file in his office a release of so much of the verdict and judgment as will reduce them to $160, the judgment so modified is affirmed.   Otherwise the judgment is reversed and a venire facias de novo awarded.