## The Bell Telephone Company of
## Pennsylvania v. North

2

*Scott W. Calderwood* and *Alexander, Clark, Mervine & Calderwood,* for plaintiff.

*John H. Stewart,* and *Stewart & Swanson,* for defendants.

FLICK, P. J., July 6, 1960—The stipulated facts of this case are as follows:

Plaintiff is a Pennsylvania corporation organized under the Act of April 29, 1874, P. L. 73, with its principal office in Philadelphia.

Defendants reside in Pine Grove Township, Warren County, and are the owners of land in said township more fully described in a deed to them dated March 25, 1950, and recorded in the Recorder's Office of Warren County in deed book 244 at page 186, which land is traversed by the Pennsylvania State Highway Route 61029, running in a northerly and southerly direction.

Prior to June 9, 1959, the right of way of said highway crossing defendants' land was 33 feet wide. Within this right of way and along the westerly side thereof plaintiff has owned and maintained a telephone pole line since May 22, 1926, when it acquired said line from Meadville Telephone Company, a Pennsylvania corporation.

Circumstances surrounding the original construction of this pole line and acquisition of the right of way therefor are not now known, but plaintiff acquired all

rights therein and thereto which were owned by Meadville Telephone Company and since May 22, 1926, has maintained, repaired and replaced said pole line.

Two bare copper wires for local service are carried by the pole line and also a lead covered interstate cable containing the following: Two government circuits between Cleveland and Warren; three Dunkirk to Kane circuits; one program transmission between Jamestown and Warren, 6 Buffalo to Kane circuits, 8 Jamestown to Kane circuits, 9 Jamestown to Pittsburgh circuits, 9 Jamestown to Warren carrier service circuits, 10 Buffalo to Warren circuits, 10 Jamestown to Warren circuits, 2 Jamestown to Oil City circuits and 1 Jamestown to Erie circuit.

On June 9, 1959, the Governor of the Commonwealth approved a plan for widening and improving said highway, a copy of the plans being recorded July 14, 1959, in Warren County Highway Plan, volume 3 at page 1, et seq., as a result of which the width of the right of way crossing defendants' land was expanded from 33 feet to 100 feet, and plaintiff was notified by the Pennsylvania Department of Highways to move its pole line to a new location, inside and along the westerly line of the expanded, 100-foot right of way. The new location is, of course, outside the 33-foot right of way as the same existed prior to June 9, 1959.

Plaintiff's employe in charge of staking out locations for poles where plaintiff proposed to relocate the pole line, talked to defendant, Paul E. North, several times in regard to pole locations, and at his request changed proposed locations for some poles near defendants' south line where his house is located, offered defendants $50 but said he was not authorized to settle for damages, and staked location for the 12 poles which would comprise the pole line as relocated. On August 20, 1959, plaintiff's employes started moving the pole line to the new location as staked out. Four holes were

dug and two poles were relocated. The next day defendant, Paul E. North, using his tractor, effectively stopped plaintiff's employes from continuing with the location of the pole line. So stopped, plaintiff brought this equity action to enjoin defendants from interfering with moving its pole line.

The respective claims of the parties are stated in plaintiff's brief as follows:

"The Plaintiff takes the position that they have a present and existing right to remove the old pole line and install a new pole line along the edge of a widened right of way, however, in the right of way. The Defendants take the position that while Plaintiff has the right to maintain the pole line in the old right of way, they presently have no right to install a pole line in the recently acquired part of the right of way."

Plaintiff asks the court to enjoin the defendants from interfering with the exercise of this "present and existing right," and defendants, denying the existence of such right, claim that plaintiff's efforts to relocate the pole line amount to a trespass and they ask the court to enjoin plaintiff from relocating the line.

Fundamental for a decision of this case is the determination of the respective rights of the parties. Plaintiff's rights in connection with the pole line inside the right of way of highway 61029, which it acquired in 1926 and has maintained since that time, are created by the General Corporation Act of April 29, 1874, P. L. 73. This act authorizes the incorporation of telegraph companies, gives them the right to construct their line along and upon public roads and highways and sets up the method of compensating the owners of property abutting on the road or the highway when damages cannot be agreed upon. This act applies to telephone companies as well as telegraph companies: People's Telephone and Telegraph Co. v. Berks and Dauphin Turnpike Road, 199 Pa. 411, 414. Referring

to the rights given by the Act of 1874, the court said, in Achenbach v. Slate Belt Telegraph and Telephone Co., 73 Pa. Superior Ct. 568, at page 571: "It is well here to remember that telegraph and telephone companies do not have the unlimited right of eminent domain. Their right, in that regard, is limited to the public highway."

Clause 1 of section 33 of the Act of 1874, amended by the Act of April 22, 1905, P. L. 294, to include telephone as well as telegraph companies, provides that the line authorized to be constructed "along, under and upon any of the public roads, streets, lanes or highways, . . . shall not be so constructed as to incommode the public use of said roads, streets, lanes or highways." The franchise granted by the act must "be exercised in subordination to the rights of the public on the roads of the State": Little v. Telegraph Co., 213 Pa. 229, 236.

This accounts for the fact that plaintiff's pole line in this case, as are such lines generally, was constructed within the 33-foot highway right of way and along the westerly side thereof. The basic rights of the Commonwealth, the traveling public, the owners of property abutting on a highway and a telephone company desiring to construct a line along and upon the highway, are clearly distinguished in the case of Hindin v. Samuel, Mayor, 158 Pa. Superior Ct. 539, at page 542, as follows:

"In Pennsylvania it is well established that the title to property abutting on a public street extends to the center of that street. Scranton v. Peoples Coal Co., 256 Pa. 332, 100 A. 818. The public acquires an easement in the highway; the fee of the land remaining in the owner subject to the easement and the land may be used by the owner for any purpose not inconsistent with the easement acquired by the public. Duquesne

6

Light Co. v. Duff, 251 Pa. 607, 97 A. 82. No person, corporation or individual has the right to make a special or exceptional use of the public highway not common to all citizens except by grant from the sovereign power. Owl Protective Co. v. Public Service Commission, 123 Pa. Superior Ct. 382, 187 A. 229; Philadelphia Co. v. Freeport Borough, 167 Pa. 279, 31 A. 571. As this Court stated in Philadelphia v. Teller, 50 Pa. Superior Ct. 260, at page 265: 'The highways belong to the commonwealth in trust for the great body of the people, and he who claims a peculiar privilege to invade them must establish his right under some statute, or valid municipal regulation, ordained in pursuance of statutory authority. Livingston v. Wolf, 136 Pa. 519; Commonwealth v. Harris, 15 Phila. 10; Kopf v. Utter, 101 Pa. 27; Commonwealth v. Kembel, 30 Pa. Superior Ct. 199'."

Plaintiff's rights in this case, to make a special use of the highway not common to all citizens, are conferred by the Act of 1874, as amended. As stated, clause 1 of section 33 of the act authorizes plaintiff to construct its line as was done more than 30 years ago. Clause 2 is concerned with the rights of persons over whose land the highway runs, the so-called abutting property owners, whose title extends to the center of the road. In this case defendants' title extends under the entire right of way for they own the land on both sides of the highway. The nature and extent of the landowner's rights are discussed by Mr. Chief Justice Kephart in the case of Breinig v. Allegheny County, 332 Pa. 474. While this case did not involve rights of telephone companies under the Act of 1874 but the police power of the county, the court was required to consider "the relative rights of the public and the abutting landowners in the use of the highway and the abutting land," page 477. On this the Chief Justice

said: "Contrary to a general impression, when land has been taken for public use as a highway, the owner does not surrender his entire title to the land so taken, but reserves the fee in the residue of the highway land and he may, as to such residue, exercise full rights of ownership. This residue of fee embraces rights above and below the surface: Cain v. Aspinwall-Delafield Co., 289 Pa. 535, 539. Above, or on, the surface he may prevent members of the public from an unlawful use of the highway; for illustration, the parking of automobiles in front of an owner's premises may be prevented by him, and police regulations permitting such parking will not preclude the owner from enforcing his right to remove the car. Permission by the authorities to park for a limited period confers only a qualified privilege as against the public, and that privilege cannot infringe upon the abutting owner's private rights in the land in the highway. The abutter may erect steps, cellar doors, awnings, projecting windows, cornices, balconies and the like, and may plant shade trees along the highway, . . . It is clear that, when the authorities take part of an owner's lot or land for highway purposes, his rights in the residuum of fee are not entirely swept away": Pages 477-79.

As stated, clause 2 of section 33 of the Act of 1874, P. L. 73, as amended, 15 PS §2293, is concerned with damages claimed by the landowner by reason of a telegraph or telephone company exercising its limited right of eminent domain under clause 1. It has long been held that the exercise of this right, in a rural highway, imposes an additional servitude on the land for which the owner has the right to be compensated under the Constitution of Pennsylvania. In Sterling's Appeal, 111 Pa. 35, referring to the line of a gas company laid in a highway right of way, the court said, page 41:

"Laying and maintaining a pipe line, at the ordinary depth under the surface, necessarily imposes an additional burden on the land, not contemplated either by the owner or by the public authorities, when the land was appropriated for the purpose of a public road. It is a burden, moreover, which to some extent, at least, abridges the rights of the landowner in the soil traversed by the road, and hence it is a taking within the meaning of the constitutional provision requiring just compensation to be made for the property taken, injured, or destroyed. (Const. Art. XVI, sect. 8)." This opinion was quoted in connection with a telephone line in Shinzel v. Bell Telephone Co., of Philadelphia 31 Pa. Superior Ct. 221, in which the court said, page 231: "The principle has been recognized in many other cases, including: Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506, and Penna. Tel. Co. v. Hoover, 24 Pa. Superior Ct. 96, and is the settled rule in this commonwealth with respect to public roads in rural districts."

Clause 2 of section 33 provides:

"In all cases where the parties cannot agree upon the amount of damages claimed, or by reason of the absence or legal incapacity of the owner or owners no such agreement can be made, for the right to enter upon lands or premises for the purposes named in this section, the company shall tender a bond, or have the same filed in the manner provided in the forty-first section of this act, and proceedings shall be had as therein set forth."

In the Hoover case, the plaintiff telephone company filed a bond provided for in clause 2 but claimed that this gave it the right to construct its telephone line not only in the highway but anywhere on defendant's lands so as to cause the least possible inconvenience or injury, because clause 2 did not sufficiently mention

damages for entering on public roads, highways, etc. The lower court agreed with the telephone company's argument but the Superior Court reversed, saying:

"In view of the fact that we have lately held in Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506, that an owner of land is entitled to damages for the erection of telephone poles upon a public road upon which his property abuts and that the decision in that case rests upon the ground that he not only has an interest in the land but is the owner of the land itself, we cannot see that the second clause of the section in question raises any special difficulty in its interpretation.

"The owner of a farm, through and over which a public highway has been laid out and opened under the right of eminent domain, is as much the owner of the land occupied by the highway after it has been laid out and opened as before. His actual ownership or right to the fee has not been taken away. True it has been dedicated to public use and the public has the right, by reason of that dedication, to use if for the purposes of a highway, but in other respects the owner has all the rights and privileges which he had before. He erects his buildings, he arranges the approaches thereto, he plants his shade trees with reference to the use to be made of his land as a highway. . . . When, therefore, the term lands and premises is used in the second clause, it evidently refers to lands and premises previously occupied by the public roads, streets or highways over which the right to pass in the construction of its telegraph lines has been conferred by clause 1": Page 101.

The same rule of law was expressed by the Supreme Court of Pennsylvania in Duquesne Light Company v. Duff, 251 Pa. 607, at page 611, as follows:

"When the land is taken for a rural highway, the only servitude contemplated by the public authorities

and the owner is the well understood burdens of a right of passage by the public with its incidental powers, and damages are awarded the owner for the imposition of that and no other servitude upon the land. The appropriation of land for a highway is a taking for public use within the intendment of the Constitution, and if any additional servitude is created other than the one originally imposed it must be with the consent of the owner or for compensation made or secured to him." See also 46 South 52nd Street Corporation v. Manlin, 398 Pa. 304, 312.

Compensation for damages that may result from imposing an additional servitude on the land in the highway is secured to the land owner by the telephone company's bond provided for in clause 2, 15 PS §2293. Until the bond is filed, the telephone company is a trespasser if it attempts to construct a pole line in the highway without consent of the abutting owner, and equity will enjoin such an action. In Englehart v. West Moreland Water Company, 165 Pa. Superior Ct. 156, at page 158, the court quoted from earlier decisions as follows:

" 'Our constitutional provision clearly makes the payment or securing of compensation the turning point in the transfer of title . . . [quoting Article XVI, Section 8, of the Constitution of Pennsylvania] . . . Until compensation is paid or secured, no title vests in the condemnor. If it enters upon the land for the purposes of construction before compensation has been made or secured, it is a trespasser. . . . "Before payment or security, it is clear that the entry is tortious and not rightful." ' "

After the statute has been complied with by filing a bond, an injunction will be dismissed: Wodack v. Bell Telephone Co. of Pennsylvania, 62 Pa. Superior Ct. 375, in which the court said, page 378:

"The company has the right to use the highways: that right cannot be denied. The consent of the supervisors is not a prerequisite to the exercise of said right.

"The damages, if any, that may be occasioned to the land of the plaintiff within the road limits by the erection of poles and stringing wires, can be recovered in an action of law: Shevalier v. Postal Tel. Co., 22 Pa. Superior Ct. 506. Payment of these damages has, in this case, been secured by a bond, and his rights are thus fully protected. In Pfoutz v. Penna. Tel. Co., 24 Pa. Superior Ct. 105, it was decided that when a bond is duly filed, the court will not continue an injunction obtained by the owner against the use of the road by the telephone company, although the supervisors have not consented to such use. Without deciding the question of the necessity of municipal consent, the court in that case held that as far as the owner of the land was concerned, the company had the right, upon filing a proper bond, to use the highway for the erection of its line."

The method of determining the amount of damages secured by the bond, if any damages are found, is provided by section 41 of the Act of 1874. This method has apparently stood the test of time for in 86 years it has only been amended by the Act of May 5, 1911, P. L. 112, 15 PS §481, which makes no change except to reduce the number of viewers from five to three. The language of this section is calculated to result in fair treatment to the land owner and to the company exercising its rights under the act. Damages are not to be found solely because such rights are being exercised. The section provides that in all cases in which the corporation and the owner cannot agree ". . . for the compensation proper for the damage done or likely to be done to or sustained by any such owner or owners of such waters, streams, land or materials, which

such corporation may enter upon, use or take away, in pursuance of the authority herein given, . . . the court of common pleas of the proper county, on application thereto by petition, either by said corporation or by the owner . . . shall appoint three discreet and disinterested freeholders of the proper county, and [after notice] . . . said viewers to meet at or upon the premises where the damages are alleged to be sustained or the property taken, . . . and the said viewers, having been first duly sworn or affirmed faithfully, justly and impartially to decide and true report to make concerning all matters and things to be submitted to them, and in relation to which they are authorized to inquire, in pursuance of the provisions of this act, and having viewed the premises, they shall estimate and determine the quantity, quality and value of said lands, streams or property so taken or occupied, or to be taken or occupied, or the materials so used or taken away, as the case may be, and having a due regard to, and making just allowance for, the advantages which may have resulted, or which may seem likely to result, to the owner or owners of said streams, land or materials, in consequence of the making of the improvements or conducting the operations of such corporation, or of the construction of works for which the property is to be taken; and after having made a fair and just comparison of said advantages and disadvantages, they shall estimate and determine whether any, and, if any, what amount of damages has been or may be sustained, and to whom payable, and make report thereof to the said court; and if any damages be awarded, and therefore be confirmed by the said court, judgment shall be entered thereon; and if the amount thereof be not paid within thirty days after the entry of such judgment, execution may then issue thereon, as in other cases of debt,

for the sum so awarded and the costs and expenses incurred shall be defrayed by the said corporation; and each of the said viewers shall be entitled to one dollar and fifty cents per day for every day necessarily employed in the performance of the duties herein prescribed, to be paid by such corporation."

This act also provides that "In all cases where the parties cannot agree upon the amount of damages claimed, . . . the corporation shall tender a bond, with at least two sufficient sureties, to the party claiming or entitled to any damages, . . . the condition which shall be that the said corporation will pay, or cause to be paid, such amount of damages as the parties shall be entitled to receive, after the same shall have been agreed upon by parties or assessed in the manner provided for by this act." If the owner does not accept the bond tendered, it is to be presented to court, after notice, for approval: 15 PS §482. The section also provides for exceptions to and an appeal from the viewer's report, with jury trial on the issue and writ of error from the Supreme Court to any final judgment, "in the manner prescribed in other cases": 15 PS §483.

There can be no dispute as to the procedure under the Act of 1874 as above set forth, nor does plaintiff contend that any of the rules or principles of law hereinbefore recited as to existing rights under the act are invalid. However, all of the foregoing discussion is necessary because, there being no dispute of fact in this case, plaintiff's contention must be considered against this background of existing law.

Plaintiff claims that it is not required to comply with the Act of 1874 in connection with moving its pole line from its location in the 33-foot right of way to the proposed location in the expanded right of way; that its present rights in connection with the pole line which it acquired from Meadville Telephone Company

14

on May 22, 1926, and which it has used and maintained since that date, include the right to move the line to the proposed location. No case was cited and none could be found in which such a claim was made by a corporation organized under the Act of 1874 or the Supplemental Act of July 22, 1919, P. L. 1123, which extended its provisions specifically to telephone companies, although the factual situation of this case must have existed many times. No such claim was made by plaintiff when it was apparently faced with the same situation about 10 years ago, as shown in the case of Castle View Burial Park, Inc., v. Bell Telephone Company of Pennsylvania, 367 Pa. 289. But it is not certain from the opinion that the line which the plaintiff sought to move to a location in the newly condemned land was within the old right of way or along side of it.

The novelty of plaintiff's claim proves nothing, although the Court in Pennsylvaina Telephone Company v. Hoover, supra, inferred that the right there claimed did not exist or the "astute legal minds, industrious and assiduous in ascertaining and asserting the rights of the corporations which controlled them" would have discovered such right at some time during the past 30 years. In this court's opinion, if lawyers lack imagination and courage to assert new rights, the law will not grow, as it must, by experience with changing conditions. The pole star for the courts, however, is equal justice under law.

The facts under which the right now claimed by plaintiff must be established are clear and simple. Plaintiff has owned and maintained a telephone pole line in the 33-foot right of way of Pennsylvania State Highway Route 61029 where the same crosses defendants' land since May 22, 1926, when it acquired said land from Meadville Telephone Company together

with whatever rights, privileges and grants in connection therewith were owned by Meadville Telephone Company. These are the fundamental facts; these facts are basic and any other facts to establish plaintiff's claim are only such as can be lawfully presumed from these facts. One other fact, which can be presumed from these basic facts, is stated in the amended complaint in equity as follows: "it is presumed that the right to maintain a pole line in the right of way of the highway was acquired by one of the methods authorized by law and that said right of way entitles plaintiff to make changes, not affecting the character of the servient estate so long as the use is confined strictly to the use and maintenance of a telephone pole line."

The parties had no knowledge as to the circumstances under which plaintiff's line was constructed by its predecessor in title. Grants of a right of way could have been obtained from defendants' predecessors in title and permission from the Pennsylvania Department of Highways to construct a line within the 33-foot right of way, or plaintiff's predecessor could have enforced its right of eminent domain under the Act of 1874, with consent of the owner of abutting property or compensating him for damages, by agreement or as provided in the act. The record is a complete blank as to which method was pursued.

Can a grant be presumed? If so, it cannot extend beyond the facts which give rise to it. The landowner may grant the right for telephone lines anywhere on his land. He may grant the exact right claimed by plaintiff in this case, to wit: To construct and maintain a telephone line within the right of way of the highway then existing and the further right to relocate the line on land that may later be condemned to widen the highway. Such a grant necessarily has an

element of speculation about it and, therefore, cannot be presumed. The facts give rise to the presumption and the grant presumed to have been made must be limited by the facts.

Plaintiff's counsel cites South Penn. Telephone Company v. Stockdale, 9 D. & C. 23, as authority for the presumption of a grant where plaintiff has been using a telephone line across defendant's land for 33 years. This, however, is definitely not the law where the company had the right to construct a line where it was located under a statute giving it the right of eminent domain. The presumption which arises in such a case is a presumption that the land owner was paid for any damages to his land caused by subjecting it to the servitude. When no proof is shown to the contrary, the company having the statutory power to construct a line is presumed to have fulfilled its constitutional obligation to render just compensation to the owner over whose land the line was constructed. This rule was established in the case of Carter v. Ridge Turnpike Company, 208 Pa. 565. There the company, which was given power of eminent domain by the Act of January 26, 1849, had maintained its road for more than 20 years. Judgment in ejectment for the land owner was reversed by the Superior Court: Carter v. Ridge Turnpike Company, 22 Pa. Superior Ct. 162, on the ground that, with no evidence as to the circumstances under which the road was constructed, a grant to the company must be presumed. On appeal, the Supreme Court said:

"We affirm the judgment of the Superior Court on the ground that the presumption of payment of damages had not been overcome by the plaintiffs, and not for the reason given by that court, that the turnpike company had acquired title by adverse possession": page 568. This rule was later followed by the Superior Court, in regard to a telegraph line, in the case of

Clohessy v. Western Union Telegraph Company, 61 Pa. Superior Ct. 182. The line was in the public highway located across plaintiff's land and was in existence when he bought the land, more than 20 years before suit was brought. The court said:

"That the defendant might acquire the right by grant or by entry under its qualified right of eminent domain is not controverted. As an incorporated telegraph company it had authority to contract with the landowner for the use of that portion of the highway necessary for the maintenance of its line, and it might also enter on the highway under the Act of 1874, subject to its constitutional obligation to make just compensation for property taken, injured or destroyed by the construction or enlargement of its works. The evidence warrants the conclusion that the telegraph line had been in operation several years before the plaintiff bought the land, and there is no evidence that the occupancy of the road by it was unlawful. The owner was charged with notice of the conditions existing on the ground and of the fact that the defendant was maintaining its line after he became the purchaser. Without evidence the presumption is that it acquired the right to use the road by one of the methods authorized by law. It cannot be held, therefore, that the defendant is prima facie a trespasser: Carter v. Ridge Turnpike Co., 208 Pa. 565. . . . For more than twenty one years he seems to have acquiesced in the defendant's use of its property. If in lawful occupancy of the premises the original owner or under some circumstances the plaintiff might have a claim for damages, but the presumption of payment arising after the lapse of twenty years from the time demand might be made therefor imposes on the claimant the burden of showing that such damages have not been paid. This rule was applied in Carter v. Ridge Turnpike Co.,

18

supra, and is of controlling effect in this case. This lapse of time does not preclude the right to recover damages for the entry if as a matter of fact they have not been paid, but the burden of proof is cast on the claimant to prove nonpayment."

The court held that the trial judge should have charged the jury as follows:

"Since the defendant company entered upon the public highway through plaintiff's land more than 21 years ago under the proofs in this case, we instruct you that it is presumed that the defendant company made due compensation to the then owner of the reversion in the highway for the easement thus acquired. There is no proof in this case to rebut this presumption of payment."

Under the foregoing rule, it is clear that plaintiff's pole line within the 33-foot right of way, was lawfully constructed pursuant to the Act of 1874, and that it must be presumed, there being no proof to the contrary, that just compensation was paid for placing this additional burden in the form of an easement upon the land. Plaintiff would no doubt agree but insists that what was paid for was not only the right to construct and maintain the line where the same was located but also the right to relocate the line, along that portion of defendants' land recently condemned for widening the highway. Can the presumption of payment include the new location?

In agreeing on damages for the line as constructed, consideration of a possible relocation of the lines would be a matter of pure speculation. How could such an item be considered by the parties when they had no knowledge as to what the future held in regard to the highway. Viewers appointed by the court under the Act of 1874 could not speculate as to possible future changes in the highway and consequent relocation of

plaintiff's pole lines. The act provides that the viewers, "having viewed the premises they shall estimate and determine the quantity, quality and value of said lands, streams or property so taken or occupied, or to be taken or occupied." The phrase "to be taken or occupied" can not mean to be taken at some unknown future time in some unknown future location. If a viewer's award was appealed from and the issue tried by a court and jury, the correct measure of damages is the difference between the market value of the owners' land immediately before the construction of the telephone line and the value of the property immediately after the construction, as affected thereby: Lamont v. West Penn Power Co. 300 Pa. 78, 84.

"In Clements v. Phila. Co., 3 Pa. Superior Ct. 14, Smith, J., declared: 'As elements of compensation, only those injuries are to be considered which arise so naturally as to be foreseen with reasonable certainty, and are so definite in character that their injurious effects can be presently calculated and measured, pecuniarily, with reasonable accuracy. Viewers and juries are permitted to take into account only injuries certain and definite in their nature and consequences, and substantially affecting the immediate market value of the land; while claims for damages based on theories, conjectures and possibilities have not been allowed: Wallace v. Jefferson Gas Co., 147 Pa. 205; Railway Co. v. McCloskey, 110 Pa. 436' '': Shuster v. Printing Telegraph Co., 34 Pa. Superior Ct. 513, 518.

In the Shuster case, defendant constructed a telephone line in the public highway which crossed plaintiff's farm, proceeding under the Act of 1874. Damages to plaintiff's land were assessed, first by viewers, and on appeal from their report, by a jury. Neighbors testified that the value of plaintiff's farm was reduced

20

because lightning might hit the line, run along the wires and injure plaintiff or his building. No facts were given as to the likelihood or possibility of damage by lightning other than the opinion of these witnesses. In the absence of such facts the court held that the testimony was incompetent because the suggested damages were "fanciful, remote and speculative."

The court commented on speculative elements of damages, pages 517 and 518 as follows: "Under our system of jurisprudence when the property of an individual has been appropriated for public use, his right to recover compensation, commonly called damages, therefor, is perfect, and he may proceed to enforce it as soon as the act of appropriation is complete. He is not required to await even the beginning of the actual work of construction on the ground. It is also true that he not only may but must recover in one proceeding, even when thus promptly begun, all of the compensation intended by the law as a satisfaction for the injuries resulting from the construction and use of the prospective improvement, or the subjection of his property to a servitude from which it was formerly free.

"It would therefore seem to follow that in such cases the injuries for which compensation is to be made are those and only those which can be ascertained and valued as well before they actually occur as afterwards. This is but another way of saying that tribunals awarding such compensation, will confine their attention to injuries which are real and actual, and which, although they have not yet occurred, will so naturally, usually and probably follow the appropriation of the land and its subjection to the new public use, that their happening can be reasonably foreseen, their extent measured and their equivalent in money ascertained. To go beyond this limit would be to step at once into the domain of speculation or fancy and

compel courts and juries to estimate, without rule or standard, the present cash value of all the apprehensions of future injury the imagination of a plaintiff or his witnesses might suggest."

It is well for plaintiff that the law does not allow viewers and juries to speculate as to possible changes in the highways and consequent relocation of pole lines, for otherwise the testimony of dissatisfied land owners could result in unjustly exorbitant verdicts. In this connection it may be just as well to note that, with telephone lines constantly under construction all over the State, there can be only a very few dissatisfied land owners for there is little litigation. In nearly all cases consent to construction is obtained or the amount of damages is agreed upon as suggested in the Act of 1874.

As the relocation of its pole line which plaintiff now seeks to accomplish could not have been considered as an element of the damages presumed to have been paid for the construction of the existing line, the right to such relocation could not have been obtained by a creation of the original easement. That plaintiff acquired only the right to the line where it was located is shown by a quotation from the first case cited in plaintiff's brief:

"The easement acquired in land condemned for the purpose of a telegraph or telephone line consists of the right to occupy the land with poles and fixtures for guy wires and the right to enter for the purposes of erecting and maintaining the line, and to use the structure for the purpose for which it was condemned. In the construction of the line the branches of trees may be trimmed when necessary. Additional poles and wires may be erected when the necessities of the business require it. The only exclusive right of occupancy which is acquired is the occupancy of the land where

the poles are erected. The owner may, therefore, use the remainder of his property in any manner not inconsistent with the easement acquired. 20 Corpus Juris, 1232": South Penn Telephone Company v. Stockdale, supra, page 26.

Plaintiff has the right to maintain its pole line "where the poles are erected," within the 33-foot right of way as it existed prior to June 9, 1959, and this right is presumed to have been paid for. This right does not include the right to move the line to a location in the additional right of way condemned by the Commonwealth as of June 9, 1959. The Commonwealth had the right to acquire an additional strip of land in order to widen and improve the highway, but only upon payment of just compensation therefor: Miller v. Beaver Falls, 368 Pa. 189. Plaintiff has the statutory right to move its pole line to the proposed location in the newly acquired portion of the right of way, without defendants' consent if that cannot be obtained, by complying with the provisions of the Act of 1874.

The cases cited in plaintiff's brief concerned with the manner of exercising rights of easement, approving change of a water line from a four inch line to an eight inch line, approving setting of additional poles in an existing telephone line, are not in point. The case of Dowgiel v. Reid, 359 Pa. 448, is not in point either although it contains language which, if taken out of context, would tend to support plaintiff's claim in this case, but Dowgiel v. Reid does not deal with a telephone line, with interstate circuits, maintained along and upon a public road for public convenience. There the court is concerned with an electric service line along a private road twenty feet wide established by partition proceedings in 1835 for the benefit of defendants' real estate. Five owners of a tract of land were awarded one fifth of the total acre-

age each. Two of the parcels, one of which became the property of defendant, were awarded a private road across the parcel later acquired by plaintiff, extending from defendant's parcel to the main highway, and plaintiff's parcel was awarded subject to the right and privilege of the private road reserved for the use of defendants parcel and the other parcel. Wishing to provide their farm with electric facilities, defendants contracted for a pole line along the private road but were enjoined by plaintiff's. Defendants appealed and the Supreme Court reversed, holding that the private road had been awarded to defendant's predecessor in title to the end that the owner of the land "should not live in isolation but should have such access to the outside world as was necessary to his reasonable and natural enjoyment of the ownership of the premises and of any building erected thereon"; that "Today in almost every American home in localities such as the one in which this litigation has its situs electricity is almost as much of a necessity as is water"; that even under a narrow view defendants had the right to clutter the private road with vehicles hauling fuel oil to use for heat and in generating electric light and power for their building, and therefor it was reasonable to assume that construction and maintenance of an electric line along the private road from defendants home to the main highway "is a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity, the same being obtainable only by the means above stated. Such a use is in this modern era one of the ordinary purposes of such a way; on this record this use appears to be a reasonable one and it further appears that it does not constitute an additional burden

on the servient estate except possibly one of a trifling character." No doubt the court's decision, Mr. Justice Horace Stern dissenting, would have been the same if the proposed line had been for telephone service rather than electricity, or if telephone lines were later strung along the electric line, but the holding does not support plaintiff's claim in the instant case.

In fact, the court in the Dowgiel case recognized the general rule that a pole line in a rural road subjected the servient estate to an additional burden, but found on the record that it was a burden "of a trifling character." The basis for the general rule was recognized by the Supreme Court in its opinion handed down January 18, 1960, in 46 South 52nd Street Corporation v. Manlin, 398 Pa. 304, for the court said, page 312: "While the easement acquired by the public in country roads is an easement of passage only, this is not true in Pennsylvania with respect to the public right in the streets of the city."

Plaintiff is authorized by the Act of 1874 to do exactly what it has tried to do in this case, to relocate its pole line by constructing and maintaining the same in the strip of land newly acquired for highway purposes. Condemnation by the Commonwealth subjected defendants' land to "an easement of passage only," for which the Constitution of Pennsylvania and the Constitution of the United States require defendants to be fairly compensated: Miller v. Beaver Falls, supra. Defendants are also entitled to damages, if any are found to exist pursuant to law, by reason of the subjection of their land to the additional easement of plaintiff's telephone line. Plaintiff must comply with the provisions of the Act of 1874.

Plaintiff has pointed out that compensation has already been paid for a telephone line in Highway Route 61029, that relocation of the line is not a matter of its

choosing, and that the whole project is calculated to improve the condition of public travel and communication. However, if such facts are accepted as controlling considerations, " ' "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416': White's Appeal, 287 Pa. 259, 266, 134 A. 409": Miller v. Beaver Falls, supra, page 198.

Defendant's answer, under new matter, asks the court to enjoin plaintiff from crossing their lands for any purposes and from maintaining the relocated poles, also for damages already sustained. This is too broad and damages to date under the proof in this case cannot be more than nominal. . . .

### Decree

And now, July 6, 1960, for the reasons stated in the foregoing opinion and pursuant to the findings and conclusions therein made, and upon consideration of the entire record of this case, it is hereby ordered, adjudged and decreed as follows:

1. Plaintiff's complaint in equity is dismissed.

2. Plaintiff is enjoined from moving its telephone line to that portion of defendants' land in Pine Grove Township condemned by the Commonwealth for highway purposes as of June 9, 1959, unless and until plaintiff complies with the provisions of the Act of April 29, 1874, P. L. 73, as amended.

3. Costs of this proceeding to be paid by plaintiff.

The prothonotary is directed to enter this decree, nisi, and to give notice thereof forthwith to the parties of record or their counsel. If no exceptions are filed thereto within 20 days after the entry of this decree, the same shall become final as of course.